UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| MICHAEL TOMICK, | : | |
|     Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. |
| | : | 3:06-cv-01660 (VLB) |
| UNITED PARCEL SERVICE, INC., | : | |
| ET AL., | : | |
|     Defendants. | : | September 19, 2008 |

## MEMORANDUM OF DECISION GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [Doc. #37]

The defendants, United Parcel Service, Inc. ("UPS"), and Kevin Trudelle, a UPS supervisor, move for summary judgment in this action filed by the plaintiff, Michael Tomick, a former UPS driver. UPS and Trudelle argue that Tomick cannot maintain his federal disability discrimination claims because he does not have a disability that satisfies the federal statutory definition of that term. The Court agrees with that argument. Accordingly, the defendants' motion for summary judgment is GRANTED as to Tomick's federal claims, and his state law claims are REMANDED to the Connecticut Superior Court for the Judicial District of New London.

Tomick worked for UPS from 1984 until he was terminated on December 3, 2004. He then sued UPS and Trudelle in Connecticut Superior Court, asserting violations of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 et seq.; the Connecticut Fair Employment Practices Act (CFEPA), Conn. Gen. Stat. § 46a-51 et seq.; a Connecticut state statute that requires employers to have reasonable

suspicion to require employees to submit to a urinalysis drug test, Conn. Gen. Stat. § 31-51x; and causes of action for intentional infliction of emotional distress and negligent infliction of emotional distress. UPS and Trudelle removed the case to this Court on the basis of federal question jurisdiction pursuant to 28 U.S.C. § 1331 because of Tomick's ADA claims.

Tomick suffered a back injury while performing his job in January 2003. As a result, he acquired a 13 percent permanent partial disability of the lumbar spine. He did not return to work until November 2003. Approximately one year later, on November 30, 2004, Tomick again injured his back while he was at work. He received treatment for his injury the next day and was allowed to return to work without any medical restrictions on December 2, 2004. On that morning, a UPS supervisor named Michael Hebert accompanied Tomick on his route in order to ensure that Tomick's work methods were appropriate in light of his injury. Upon completing his examination, Hebert told Tomick that a driver's helper would meet him soon along his route in order to assist him with his job. UPS provides helpers during the holiday season, and Tomick believed that he needed a helper in order to do his job. However, a helper did not meet Tomick as planned, and Tomick called his wife to tell her about the absence of a helper. Tomick's wife then called Trudelle, Tomick's supervisor, to discuss the problem.

After eating lunch at home, Tomick drove his UPS truck back to the depot. He told Trudelle that he was experiencing back pain and needed to see a doctor. Trudelle then told Tomick that he needed to submit to tests for substance abuse

and fitness for duty. According to Tomick, when he restated his intention to see a doctor for his back pain, Trudelle fired him. Tomick then told Trudelle that he "should have kicked [Trudelle's] ass for the way [Trudelle] spoke to [Tomick's] wife." [Doc. #44, Ex. C, p. 53] Tomick ultimately agreed to submit to the tests that Trudelle ordered as long as they were performed at the same health center where Tomick had previously received treatment for his back pain. The doctor at the health center determined that a substance abuse test was unnecessary and diagnosed Tomick with "[l]umbar strain with a history of degenerative disc disease with acute exacerbation." [Doc. #44, Ex. M, p. 2] The doctor allowed Tomick to return to work "at a modified duty status of no lifting more than 15 pounds and minimum bend, squat, [and] twist." [Doc. #44, Ex. M, p. 2] The next day, however, UPS terminated Tomick for having engaged in workplace violence.

UPS and Trudelle move for summary judgment on all counts of Tomick's complaint. Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The Court "construe[s] the evidence in the light most favorable to the non-moving party and . . . draw[s] all reasonable inferences in its favor." Huminski v. Corsones, 396 F.3d 53, 69-70 (2d Cir. 2004). "[I]f there is any evidence in the record that could reasonably support a jury's verdict for the non-moving party, summary judgment must be denied." Am. Home Assurance Co. v. Hapag Lloyd Container Linie, GmbH, 446 F.3d 313,

3

315 (2d Cir. 2006). "The moving party bears the burden of showing that he or she is entitled to summary judgment." Huminski, 396 F.3d at 69. "[T]he burden on the moving party may be discharged by 'showing'—that is pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." PepsiCo, Inc. v. Coca-Cola Co., 315 F.3d 101, 105 (2d Cir. 2002). "If the party moving for summary judgment demonstrates the absence of any genuine issue as to all material facts, the nonmoving party must, to defeat summary judgment, come forward with evidence that would be sufficient to support a jury verdict in its favor." Burt Rigid Box, Inc. v. Travelers Prop. Cas. Corp., 302 F.3d 83, 91 (2d Cir. 2002).

The Court focuses on Tomick's ADA claims because they constitute the only basis on which this Court's jurisdiction is asserted. "To withstand a motion for summary judgment, a discrimination plaintiff must withstand the three-part burden-shifting [test] laid out by McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973) . . . . In a nutshell, a plaintiff first bears the 'minimal' burden of setting out a prima facie discrimination case, and is then aided by a presumption of discrimination unless the defendant proffers a legitimate, nondiscriminatory reason for the adverse employment action, in which event, the presumption evaporates and the plaintiff must prove that the employer's proffered reason was a pretext for discrimination." McPherson v. New York City Dept. of Education, 457 F.3d 211, 215 (2d Cir. 2006).

UPS and Trudelle argue that Tomick has failed to set forth a prima facie

case. "In order to establish a prima facie case of discrimination under the ADA, a plaintiff must show (a) that his employer is subject to the ADA; (b) that he is disabled within the meaning of the ADA or perceived to be so by his employer; (c) that he was otherwise qualified to perform the essential functions of the job with or without reasonable accommodation; and (d) that he suffered an adverse employment action because of his disability." Brady v. Wal-Mart Stores, Inc., 531 F.3d 127, 134 (2d Cir. 2008).

UPS and Trudelle argue that Tomick has failed to demonstrate the second element of the prima facie case, that he is disabled or perceived by UPS and Trudelle to be disabled within the meaning of the ADA. Pursuant to 42 U.S.C. § 12102(2), "[t]he term 'disability' means, with respect to an individual—(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." The parties agree, as does the Court, that a 13 percent permanent partial disability of the lumbar spine is a physical impairment; see 29 C.F.R. § 1630.2(h)(1); and that working and lifting are major life activities; see 29 C.F.R. § 1630.2(i); Colwell v. Suffolk County Police Dept., 158 F.3d 635, 642 (2d Cir. 1998). The issue is whether Tomick's impairment "substantially limits" him. "The ADA does not define 'substantially limits,' but 'substantially' suggests 'considerable' or 'specified to a large degree.' . . . The EEOC has codified regulations interpreting the term 'substantially limits' in this manner, defining the term to mean '[u]nable to perform' or '[s]ignificantly

5

restricted.' See 29 C.F.R. §§ 1630.2(j)(1)(i),(ii)." Sutton v. United Air Lines, Inc., 527 U.S. 471, 491 (1999). "[W]hether a person has a disability under the ADA is an individualized inquiry." Id. at 483. The person claiming to have a disability is to be compared to "the average person in the general population." 29 C.F.R. § 1630.2(j)(1).

UPS and Trudelle cite several cases in which courts determined that an inability to lift objects weighing 10 pounds or more did not constitute a disability under the ADA. In Colwell v. Suffolk County Police Dept., 158 F.3d 635, 644 (2d Cir. 1998), one of the plaintiffs could not lift "very heavy objects," while another plaintiff could lift objects weighing only 10 to 20 pounds. The court concluded that neither plaintiff had produced enough evidence to meet the requirement of a substantial limitation under the ADA. In Amodio v. Wild Oats Markets, Inc., 2006 WL 2800903 at *15 (D. Conn. Sept. 28, 2006), the plaintiff could not perform "heavy lifting" due to neck, shoulder, and wrist injuries, but the plaintiff could care for herself and do most of her errands and chores. The court granted summary judgment to the defendant on the plaintiff's ADA claim, concluding that the plaintiff had not produced enough evidence of a substantial limitation. In Banks v. Potter, 253 F. Supp. 2d 335, 347 (D. Conn. 2003), the court granted the defendant's motion for summary judgment because the plaintiff's inability to lift more than 10 pounds for four hours each day was only a hindrance, not a substantial limitation under the ADA's definition of a disability. In Zarzycki v. United Technologies Corp., 30 F. Supp. 2d 283, 288 (D. Conn. 1998), the plaintiff

suffered from a 15 percent permanent disability of his back due to a lumbar disc injury.  Although the plaintiff could not hold a heavy weight in front of himself, as his job required, the court determined that that limitation was not substantial under the ADA and therefore granted summary judgment to the defendant on the plaintiff's ADA claim.

Tomick does not address any of those cases in his memorandum in opposition to UPS and Trudelle's motion for summary judgment, and he does not cite any cases suggesting that impairments similar to his condition would constitute a disability under the ADA.  Instead, Tomick relies solely on the interpretive guidance found in the appendix to 29 C.F.R. § 1630.  That portion of the appendix provides in relevant part:  "An individual is substantially limited in working if the individual is significantly restricted in the ability to perform a class of jobs or a broad range of jobs in various classes, when compared with the ability of the average person with comparable qualifications to perform those same jobs.  For example, an individual who has a back condition that prevents the individual from performing any heavy labor job would be substantially limited in the major life activity of working because the individual's impairment eliminates his or her ability to perform a class of jobs."  29 C.F.R. § 1630, Appendix, Interpretive Guidance.

The example given in the interpretive guidance suggests that a person has a disability under the ADA if he has a back condition that prevents him from performing "any heavy labor job."  However, "heavy labor" is not quantified or

7

otherwise defined.  Furthermore, the United States Supreme Court has noted that "no agency has been delegated authority to interpret the term 'disability'" in the ADA.  Sutton, 527 U.S. at 480.  Despite that lack of authority, the Equal Employment Opportunity Commission has issued the above-cited regulations and interpretive guidance regarding the meaning of a disability under the ADA.  The Supreme Court has not decided whether those regulations and interpretive guidance are entitled to any deference.  Id. at 480.  Even if this Court accorded deference to the interpretive guidance that Tomick has cited, that guidance does not explain the meaning of "any heavy labor job."  Although a doctor restricted Tomick from lifting more than 15 pounds and ordered him to minimize bending, squatting, and twisting, Tomick has not provided any evidence that those restrictions would prevent a person from performing "a broad range of jobs in various classes . . . ."  29 C.F.R. § 1630, Appendix, Interpretive Guidance.  The undisputed facts regarding Tomick's condition are similar to the facts in Colwell, Amodio, Banks, and Zarzycki.  Therefore, the Court concludes that Tomick's condition is not a substantial limitation and does not qualify as a disability as that term is defined in 42 U.S.C. § 12102(2)(A).

Tomick argues in the alternative that his condition constitutes a disability under 42 U.S.C. § 12102(2)(C), "being regarded [by an employer] as having [a disability as defined in 42 U.S.C. § 12102(2)(A)]."  "[W]hether an individual is regarded as having a disability turns on the employer's perception of the employee and is therefore a question of intent, not whether the employee has a

8

disability. . . . It is not enough, however, that the employer regarded that individual as somehow disabled; rather, the plaintiff must show that the employer regarded the individual as disabled within the meaning of the ADA." Colwell, 158 F.3d at 646. In order to maintain that claim, Tomick must point to evidence that UPS and Trudelle considered him to be significantly restricted or unable to perform a broad range of jobs in comparison to the average person with comparable skills. Id. at 643. However, Tomick cites only UPS and Trudelle's knowledge of his back injuries. That knowledge may be sufficient to support a perception that Tomick was "somehow disabled," but not that he was "disabled within the meaning of the ADA." Id. at 646.

The defendants' motion for summary judgment [Doc. #37] is GRANTED as to Tomick's ADA claims. Pursuant to 28 U.S.C. § 1367(c)(3), the Court declines to exercise supplemental jurisdiction over Tomick's state law claims and REMANDS them to the Connecticut Superior Court for the Judicial District of New London. The Clerk is directed to CLOSE this case.

                                              IT IS SO ORDERED.

                                        /s/
                                      Vanessa L. Bryant
                                      United States District Judge

Dated at Hartford, Connecticut: September 19, 2008.